**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| NETHERLANDS INSURANCE | ) | |
| COMPANY and HAWKEYE-SECURITY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | Case No. |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CELLAR ADVISORS, LLC, DOMAINE | ) | |
| SAINT LOUIS, LLC, DOMAINE NEW | ) | |
| YORK, LLC, MARC LAZAR, and GREAT | ) | |
| NORTHERN INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs The Netherlands Insurance Company ("Netherlands") and Hawkeye-Security Insurance Company ("Hawkeye-Security"), by and through their attorney of record, seek declaratory relief pursuant to 28 U.S.C. § 2201, and further state and allege:

## NATURE OF THE DISPUTE

1.      Netherlands and Hawkeye-Security issued within the State of Missouri certain policies of liability insurance to defendants Cellar Advisors, LLC ("Cellar Advisors"), Domaine Saint Louis, LLC ("Domaine Saint Louis"), and Domaine New York, LLC ("Domaine New York").  These defendants, which are owned, operated, and/or managed by defendant Marc Lazar, are in the business of wine consultation and storage.  These defendants are collectively referred to herein as the "Cellar Defendants."

2. Defendant Great Northern Insurance Company ("Great Northern") issued a homeowners' insurance policy to Reid and Krista Buerger. The Buergers contracted with the Cellar Defendants for wine consultation and storage services.

3. The Buergers alleged that the Cellar Defendants wrongfully converted the Buergers' lost or stole portions of their wine collection and, by failing to use funds supplied by the Buergers to purchase wine, converted their funds to the uses of the Cellar Defendants. The Buergers made a claim against their Great Northern homeowners' insurance policy for this alleged loss. Great Northern paid the claim, and has initiated suit against the Cellar Defendants in the Court of Common Pleas in Montgomery County, Pennsylvania as subrogee of the Buergers.

4. The Cellar Defendants have made claim against Netherlands and Hawkeye-Security for defense and indemnification with respect to Great Northern's suit.

5. There is no coverage under the liability insurance policies issued by Netherlands and Hawkeye-Security, because the claims arise out of events that did not occur while the policies were in effect, because the claims do not arise out of "occurrences," because the claims are not for "property damage," and/or because the claims are excluded from coverage under one or more applicable policy exclusions, including exclusions for claims arising out wine consulting services and claims for damage to property entrusted to the insureds. Netherlands and Hawkeye-Security, accordingly, seek this Court's declaration that they have no duty to defend or indemnify the Cellar Defendants with respect to Great Northern's claims.

## PARTIES

6. Plaintiff Netherlands is an insurance company incorporated and existing under the laws of the State of New Hampshire, with its principal place of business

2

located in Boston, Massachusetts.  Netherlands is, therefore, a citizen of the states of New Hampshire and Massachusetts.

7.    Plaintiff Hawkeye-Security is an insurance company organized and existing under the laws of the State of Wisconsin, with its principal place of business located in Waukesha, Wisconsin.  Hawkeye-Security is, therefore, a citizen of the State of Wisconsin.

8.    Defendant Cellar Advisors is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business located in St. Louis, Missouri.  Upon information and belief, the members of Cellar Advisors are residents and citizens of the State of Missouri.  Further upon information and belief, no member of Cellar Advisors is a citizen of the states of New Hampshire, Massachusetts, or Wisconsin.

9.    Defendant Domaine Saint Louis is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business located in St. Louis, Missouri.  Upon information and belief, the members of Domaine Saint Louis are residents and citizens of the State of Missouri.  Further upon information and belief, no member of Domaine Saint Louis is a citizen of the states of New Hampshire, Massachusetts, or Wisconsin.

10.    Defendant Domaine New York is, upon information and belief, a limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of business located in Edison, New Jersey.  Upon information and belief, the members of Domaine New York are residents and citizens of the states of

Missouri and New Jersey.  Further upon information and belief, no member of Domaine New York is a citizen of the states of New Hampshire, Massachusetts, or Wisconsin.

11.     Defendant Marc Lazar is an individual and, upon information and belief, a resident and citizen of the State of Missouri.

12.     Defendant Great Northern is an insurance company organized and existing under the laws of the State of Indiana, with its principal place of business located in Warren, New Jersey.  Great Northern is, therefore, a citizen of the states of Indiana and New Jersey.

**JURISDICTION AND VENUE**

13.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332, because this dispute is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to this dispute occurred in this District.

15.     This is an action for a Declaratory Judgment pursuant to 28 U.S.C. § 2201.

16.     Personal jurisdiction is proper as to defendant Marc Lazar because, upon information and belief, he is a resident and citizen of the State of Missouri.

17.     Personal jurisdiction is proper as to defendant Cellar Advisors because it is organized and existing under the laws of Missouri, maintains a physical place of business within the State of Missouri, operates by and through one or more members who are residents and citizens of Missouri, engaged in the conduct herein at issue (in whole or in part) within the State of Missouri, contracted with Great Northern's insureds

within the State of Missouri, and contracted for insurance policies that were issued in the State of Missouri.

18.     Personal jurisdiction is proper as to defendant Domaine Saint Louis because it is organized and existing under the laws of Missouri, maintains a physical place of business within the State of Missouri, operates by and through one or more members who are residents and citizens of Missouri, engaged in the conduct herein at issue (in whole or in part) within the State of Missouri, contracted with Great Northern's insureds within the State of Missouri, and contracted for insurance policies that were issued in the State of Missouri.

19.     Personal jurisdiction is proper as to defendant Domaine New York because it operates by and through one or more members who are residents and citizens of Missouri, engaged in the conduct herein at issue (in whole or in part) within the State of Missouri, and contracted for insurance policies that were issued in the State of Missouri.

20.     Personal jurisdiction is proper as to defendant Great Northern because it asserts claims by and through Greg and Krista Buerger, who contracted with Marc Lazar and/or Cellar Advisors and/or Domaine Saint Louis within the State of Missouri, and because Great Northern asserts rights with respect to chattel that are, or at relevant times were, physically located within the State of Missouri.

## **FACTUAL ALLEGATIONS**

21.     Upon information and belief, in 2005 Reid and Krista Buerger retained Defendant Lazar to advise them regarding their wine collection and to purchase and store wines for them.

22.     Marc Lazar is described by Great Northern varyingly as the "president" or "co-owner" of the various corporate Cellar Defendants.

23.     Upon information and belief, in 2006 the Buergers entered into a contract with Cellar Advisors and, allegedly, Domaine Saint Louis, related to wine storage in St. Louis, Missouri.

24.     Upon information and belief, the Buergers entered into a contract with Domaine New York related to wine storage in New Jersey in 2012.

25.     Great Northern alleges that all of the Cellar Defendants purchased and stored wine for the Buergers between 2005 and 2014.

26.     Great Northern alleges that the Buergers, from 2005 to 2014, contracted with the Cellar Defendants to purchase and/or store approximately 10,000 bottles of wine.

27.     The contractual relationship between the Buergers and the Cellar Defendants, according to Great Northern's complaint, called for the Cellar Defendants to purchase, transport, and store the Beurgers' wine and to track the inventory of wine being stored on the Buergers' behalf.

28.     Great Northern alleges that, when the business relationship between the Buergers and the Cellars Defendants terminated in 2014, the Beurgers had their wine transported from the Cellars' facilities and noticed numerous missing bottles of wine. Particularly, the Complaint alleges that the Beurgers were missing approximately 1,300 bottles of wine worth approximately $1,976,815.07.

29.     Great Northern, the Buegers' homeowners' insurer, has paid out the loss and is suing the Cellar Defendants as subrogee of the Buergers.

30.    Great Northern's complaint asserts claims for conversion, breach of contract, unjust enrichment, negligent misrepresentation, negligence, gross negligence, bailment, and breach of fiduciary duty against the Cellar Defendants.

31.    Great Northern seeks judgment against the Cellar Defendants in the amount of $1,976,815.07 plus interest, costs, and other relief.

## THE POLICIES

32.    Netherlands issued a primary CGL policy with limits of $1 million per occurrence and a policy period of 07/05/2012 to 07/05/2013, Policy No. CBP 8926290, naming as insureds Cellar Advisors, LLC, Domaine Saint Louis, LLC and Domaine New York, LLC.  *See* Certified copy of policy, attached hereto as Exhibit A (hereinafter, "the Netherlands Policy").

33.    Hawkeye-Security issued an umbrella policy with limits of $1 million per occurrence and a policy period of 07/05/2012 to 07/05/2013, Policy No. CU 8926590, naming as insureds Cellar Advisors, LLC and Domaine Saint Louis, LLC.  *See* Certified copy of policy, attached hereto as Exhibit B (hereinafter, "the Hawkeye-Security Policy").

34.    Both policies' insuring agreements provide liability coverage for "property damage" "caused by an 'occurrence.'"

35.    The Netherlands Policy provides:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

7

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

Netherlands Policy, Ex. A at Commercial General Liability Coverage Form, at p. 1 of 17.

36.     Similarly, the Hawkeye-Security Policy provides:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay on behalf of the insured those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay is limited as described in SECTION III – LIMITS OF INSURANCE. No other obligations or liability to pay sums or perform acts or services is covered unless explicitly provided for under paragraph 2. Defense And Expense Of Claims And Suits under SECTION I-COVERAGE.

9

**b.** This insurance applies to:

**(1)** "Bodily injury" or "property damage" only if:

**(a)** The "bodily injury" or "property damage" occurs during the Policy Period, and

**(b)** The "bodily injury" or 'property damage" is caused by an "occurrence that takes place in the "coverage territory", and

Hawkeye-Security Policy, Ex. B at Commercial General Liability Coverage Form, at p. 1 of 19.

37.    Both policies define "occurrence" to mean "an accident."

38.    The Netherlands Policy provides:

**SECTION V – DEFINITIONS**

****

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Netherlands Policy, Ex. A at Commercial General Liability Coverage Form, at p. 15 of 17.

39.    The Hawkeye-Security Policy similarly provides:

**SECTION V – DEFINITIONS**

****

10

**14.** "Occurrence" means:

> **a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

> **b.** With respect to "employees" of the Named Insured, an accident or disease that results in "bodily injury".

Hawkeye-Security Policy, Ex. B at Commercial General Liability Coverage Form, at p. 17 of 19.

40.     Both policies define "property damage."

41.     The Netherlands Policy provides:

**SECTION V – DEFINITIONS**

****

**17.** "Property damage" means:

> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Netherlands Policy, Ex. A at Commercial General Liability Coverage Form, at p. 16 of 17.

42.     The Hawkeye-Security Policy provides:

**SECTION V – DEFINITIONS**

****

**21.** "Property damage" means:

> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Hawkeye-Security Policy, Ex. B at Commercial General Liability Coverage Form, at p. 18 of 19.

43.     The policies both exclude from coverage property damage to property in the in the care, custody, or control of the insured.

44.     The Netherlands Policy provides:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

****

**2. Exclusions**

This insurance does not apply to:

****

**j.  Damage to Property**

"Property damage" to:

****

**(4)**  Personal property in the care, custody, or control of the insured;

Netherlands Policy, Ex. A at Commercial General Liability Coverage Form, at p. 4 of 17.

45.    The Hawkeye-Security Policy provides:

**2. Exclusions**

This insurance does not apply to:

****

**o.  Damage to Property**

"Property damage" to:

****

**(4)**  Personal property in the care, custody, or control of the insured;

Hawkeye-Security Policy, Ex. B at Commercial General Liability Coverage Form, at p. 7 of 19.

46.    The Netherlands Policy also contains an endorsement titled **EXCLUSION ENDORSEMENT – PROPERTY ENTRUSTED**:

This endorsement modifies insurance provided under the following:

13

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

Operations:

Security and Patrol Agencies

Warehouse – cold individual storage lockers

Warehouses – miniwarehouses

As respects the operation shown in the Schedule, this insurance does not apply to "property damage" to property of others:

1. Entrusted to you for safekeeping, or

2. On premises owned by or rented to you.

Netherlands Policy, Ex. A at Commercial General Liability Coverage Form, at Endorsement Form CG 22 29.

47.     The Hawkeye-Security Policy similarly contains an endorsement titled **EXCLUSION– PROPERTY ENTRUSTED**.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

Operations:

Security and Patrol Agencies

Warehouse – cold individual storage lockers

14

> Warehouses – miniwarehouses
>
> As respects the operation shown in the Schedule, this insurance does not apply to "property damage" to property of others:
>
> 1. Entrusted to you for safekeeping, or
>
> 2. On premises owned by or rented to you.

Hawkeye-Security Policy, Ex. B, Endorsement Form 14-253 (02/04).

48.     The Netherlands Policy excludes coverage for certain property damage to property that has not been physically injured:

> **m. Damage To Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Netherlands Policy, Ex. A at Commercial General Liability Coverage Form, at p. 4 of 17.

49. The Hawkeye-Security Policy also excludes coverage for certain property damage to property that has not been physically injured:

> **r. Damage To Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> Exception:
>
> This exclusion **3.r.** does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Hawkeye-Security Policy, Ex. B at Commercial General Liability Coverage Form, at p. 8 of 19.

50. The Netherlands Policy excludes coverage for losses that were expected or intended by the insureds:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> ****

16

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured….

Netherlands Policy, Ex. A at Commercial General Liability Coverage Form, at p. 2 of 17.

51.     The Hawkeye-Security Policy likewise excludes:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

****

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured….

Hawkeye-Security Policy, Ex. B at Commercial General Liability Coverage Form, at p. 3 of 19.

52.     The Netherlands Policy contains endorsement titled EXCLUSION – DESIGNATED PROFESSIONAL SERVICES, which provides as follows:

This endorsement modifies insurance provided under the following:

17

COMMERCIAL GENERAL LIABILITY COVERAGE PART

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph 2. Exclusions of Section I - Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury" or "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

SCHEDULE

Description Of Professional Services:

WINE CONSULTING AND RELATED OPERATIONS

Netherlands Policy, Ex. A, at Commercial General Liability Coverage Part, Endorsement Form CG 21 16.

53.     The Hawkeye-Security Policy also contains endorsement titled EXCLUSION – PROFESSIONAL LIABILITY, which provides as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service shown in the Schedule by or on behalf of the insured.

SCHEDULE

18

Description of Professional Services:

WINE CONSULTING

Hawkeye-Security Policy, Ex. B at Endorsement Form 14-96(02/04).

**COUNT I – DECLARATION THAT THE POLICY AFFORDS NO COVERAGE FOR THE CLAIMS BECAUSE THE INSUREDS CANNOT ESTABLISH THAT THE LOSS RESULTS FROM OCCURRENCES DURING THE POLICY PERIOD.**

54.     Plaintiffs reallege and incorporate paragraphs 1-53.

55.     The Cellar Defendants first contracted with the Buergers in or about 2005.

56.     The Buergers allegedly discovered the lost or stolen wines in 2014.

57.     The Netherlands and Hawkeye-Security policies provide coverage with a policy period of July 5, 2012 to July 5, 2013.

58.     Great Northern has alleged a course of conduct by the Cellar Defendants occurring between 2005 and 2014.

59.     Both the policies' insuring agreements provide liability coverage for "'property damage' which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured."

60.     Neither Great Northern nor the Cellar Defendants have established or can establish that Great Northern's alleged losses result from occurrences within the effective dates of the Netherlands and Hawkeye-Security policies.

61.     Neither Great Northern nor the Cellar Defendants have established or can establish that Great Northern's alleged losses result from occurrences that were not known to the insureds prior to the policy periods of the Netherlands and Hawkeye-Security policies.

62.     Accordingly, neither the claimant nor the insureds can meet their burden to establish that the alleged losses occurred within the policy periods of the Netherlands and Hawkeye-Security policies.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiffs The Netherlands Insurance Company and Hawkeye-Security Insurance Company request that the Court enter its judgment declaring that the Policy provides no liability coverage for the claims of Great Northern Insurance Company against Cellar Advisors, LLC, Domaine Saint Louis, LLC, Domaine New York, LLC, and Marc Lazar, because Great Northern Insurance Company's alleged losses were not caused by an occurrence within the policy period.

**COUNT II – DECLARATION THAT THE POLICY AFFORDS NO COVERAGE FOR THE CLAIMS BECAUSE CLAIMANTS' INJURIES WERE NOT CAUSED BY AN "OCCURRENCE".**

63.     Plaintiffs reallege and incorporate paragraphs 1-62.

64.     Both the policies' insuring agreements provide liability coverage for "property damage" "caused by an 'occurrence.'"

65.     Both policies define "occurrence" to mean "an accident."

66.     The conduct described by Great Northern and, upon information and belief, the underlying facts, are not consistent with conduct by the Cellar Defendants being an "accident," and therefore this conduct does not constitute an "occurrence" under the policies.

67.     An accident is a sudden, unexpected, and unintentional event.

68.     An accident happens without intention or design, and is unexpected, unusual or unforeseen.

20

69.     The first cause of action asserted by Great Northern is for conversion. Conversion requires an intentional exercise of dominion or control over property owned by another, and is an intentional tort.

70.     Great Northern asserts a claim for breach of contract. Breach of contract is not an "accident," and therefore not an occurrence.

71.     Great Northern explicitly alleges that the Cellar Defendants failed to purchase wine for which they had been paid by the Buergers and consumed or otherwise converted the Buergers' wine in their possession.

72.     Moreover, the facts indicate a deliberate and intentional course of conduct by the Cellar Defendants that is inconsistent with any "accidental" cause of the Buergers' and of Great Northern's alleged loss.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiffs The Netherlands Insurance Company and Hawkeye-Security Insurance Company request that the Court enter its judgment declaring that the Policy provides no liability coverage for the claims of Great Northern Insurance Company against Cellar Advisors, LLC, Domaine Saint Louis, LLC, Domaine New York, LLC, and Marc Lazar, because Great Northern Insurance Company's alleged losses were not caused by an occurrence as defined by the Policy.

**COUNT III – DECLARATION THAT THE POLICY AFFORDS NO COVERAGE FOR THE CLAIMS BECAUSE GREAT NORTHERN'S ALLEGED LOSS IS NOT FOR "PROPERTY DAMAGE."**

73.     Plaintiffs reallege and incorporate paragraphs 1-72.

74.     Both the policies' insuring agreements provide liability coverage for "property damage" "caused by an 'occurrence.'"

75.     Both policies define "property damage" to mean:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

76.     Upon information and belief, some or all of the alleged loss arises from the Cellar Defendants' failure to purchase wine for which they had received funds from the Buergers.

77.     There is no possibility of property damage to wine that was never acquired by the Cellar Defendants.

78.     Additionally, Great Northern's complaint seeks damages for stolen or otherwise lost wine and does not allege the occurrence of any physical damage to the wine itself.

79.     Moreover, the Buergers did not lose the "use" of the wine, the wine itself was lost or stolen.

80.     This does not constitute "property damage" within the meaning of the policies.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiffs The Netherlands Insurance Company and Hawkeye-Security Insurance Company request that the Court enter its judgment declaring that the Policy provides no liability coverage for the claims of Great Northern Insurance Company against Cellar Advisors, LLC, Domaine Saint Louis, LLC, Domaine New York,

LLC, and Marc Lazar, because Great Northern Insurance Company's alleged losses do not constitute "property damage" as defined by the Policy.

## COUNT IV – DECLARATION THAT THE POLICY AFFORDS NO COVERAGE DUE TO ONE OR MORE EXCLUSIONS

81.     Plaintiffs reallege and incorporate paragraphs 1-80.

82.     The policies both exclude from coverage property damage to personal property that is in the care, custody, or control of the insured and for property that has been entrusted to the insured.

83.     The exclusions exclude coverage for the loss or theft of wine that was entrusted to the Cellar Defendants by the Buergers, within the care, custody, or control of the Cellar Defendants, and/or was located on premises owned or rented to the Cellar Defendants.

84.     The policies' care, custody or control exclusions result in no coverage for conversion or negligence claims as to wine that was being stored, entrusted to, handled, or transported by the Cellar Defendants.

85.     Accordingly, there is no coverage for the claims asserted by Great Northern against the Cellar Defendants, because some or all of the alleged loss results from damage to property that was within the care, custody, or control of the Cellar Defendants.

86.     Additionally or alternatively, the policies both exclude coverage for "property damage" to property that has not been physically injured, arising out of a deficiency in the insured's product or work or a delay or failure by the insured or anyone acting on its behalf to perform a contract or agreement in accordance with its terms.

87.     To the extent that Great Northern seeks to recover for "missing" wine which was not physically injured, the claims are excluded from coverage because they result from a deficiency in the insured's product or work or the failure to perform the contract(s) with the Buergers according to the terms of said contract(s).

88.     Additionally or alternatively, the policies both exclude coverage for losses that are expected or intended from the standpoint of the insureds.

89.     The principal claim asserted by Great Northern is for conversion, which is an intentional tort.

90.     Moreover, the alleged damages flowing from Cellar Defendants' conversion of the Buergers' funds and/or wine for the use of the Cellar Defendants were expected or intended from the standpoint of the insureds.

91.     Likewise, the Cellar Defendants' failure to purchase wine for which they had been paid by the Buergers resulted in an expected or intended injury.

92.     The Cellar Defendants' theft or consumption of the Buergers' wine would be expected to cause damage to the Buergers from the standpoint of the insured.

93.     Finally, the Cellar Defendants' breach of their contract(s) with the Buergers would result in expected or intended injury.

94.     Additionally or alternatively, the policies contain Designated Professional Services exclusions that exclude coverage for property damage arising out of wine consulting and related operations.

95.     Great Northern's claims are excluded from coverage because they result from wine consulting and related operations of the Cellar Defendants.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiffs The Netherlands Insurance Company and Hawkeye-Security Insurance Company request that the Court enter its judgment declaring that the Policy provides no liability coverage for the claims of Great Northern Insurance Company against Cellar Advisors, LLC, Domaine Saint Louis, LLC, Domaine New York, LLC, and Marc Lazar, because Great Northern Insurance Company's alleged losses do not constitute "property damage" as defined by the Policy.

BAKER STERCHI COWDEN & RICE, L.L.C.

 /s/  Angela M. Higgins
Angela M. Higgins          52159MO
2400 Pershing Road, Suite 500
Kansas City, MO  64108
Telephone: (816) 471-2121
Facsimile: (816) 472-0288
higgins@bscr-law.com

and

Martha Charepoo, MO #55641
BAKER STERCHI COWDEN & RICE, L.L.C.
1010 Market Street, Suite 950
St. Louis, Missouri 63101
T:  (314) 231-2925
F:  (314) 231-4857
mcharepoo@bscr-law.com

ATTORNEYS FOR PLAINTIFFS

4817-6805-3073v.1