IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NETHERLANDS INSURANCE COMPANY ) <br> and HAWKEYE SECURITY INSURANCE ) <br> COMPANY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CELLAR ADVISORS, LLC, ) <br> DOMAINE SAINT LOUIS, LLC, ) <br> DOMAINE NEW YORK, LLC, ) <br> MARC LAZAR and ) <br> GREAT NORTHERN INSURANCE COMPANY, ) <br> ) <br> Defendants. ) | No. 4:17-CV-02585-PLC |

**DEFENDANTS CELLAR ADVISTORS, LLC, DOMAINE SAINT LOUIS, LLC, MARC LAZAR AND DOMAINE NEW YORK, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S CROSS-CLAIMS PURSUANT TO F.R.C.P. 12(b)(6)**

I.  **BRIEF STATEMENT OF THE CASE**

The core of this action involves the question of who should bear the financial responsibility for the alleged loss and/or conversion of bottles of wine which were under the possession and control of Defendants, Cellar Advisors LLC, Domaine Saint Louis, LLC, Marc Lazar, and Domain New York, LLC (hereinafter collectively the "Cellar Defendants"). Plaintiffs, Netherlands Insurance Company and Hawkeye Security Insurance Company, instituted this declaratory judgment action seeking this Court's declaration that insurance policies Plaintiffs issued to the Cellar Defendants do not afford coverage for the allegedly converted wine. *See* Complaint (Doc. 1). In addition to the Cellar Defendants, Plaintiffs also named Great Northern Insurance Company ("Great Northern") as

a Defendant. Great Northern is also currently pursuing claims against the Cellar Defendants, which are pending in the Court of Common Pleas of Montgomery County, Pennsylvania. The Pennsylvania state court claims are the impetus to this action as Great Northern paid monies to its insureds for the loss of the allegedly converted wine. *See id*.

Great Northern's Pennsylvania state court claims seek to recover monies paid to Great Northern's insureds, Reid and Krista Buerger. The Buergers are wine collectors and contracted with the Cellar Defendants for wine consultation and storage services. The Buergers allege that over a period spanning several years, the Cellar Defendants wrongfully converted, lost or stolen portions of their wine collection. The Buergers presented a claim to their insurer, Great Northern, under their homeowners' insurance policy. Great Northern paid the claim and then as subrogee of the Buergers initiated suit against the Cellar Defendants in the Court of Common Pleas in Montgomery County, Pennsylvania. *See, id*. at ¶¶ 2-3. More specifically, Great Northern seeks to recover approximately $2 million it paid to the Buergers for thousands of bottles of wine the Buergers claim were not returned to the Buergers by the Cellar Defendants in December 2014 upon the conclusion of the business relationship between the Buergers and the Cellar Defendants. *See generally id*.

Great Northern recently filed an Answer to Plaintiffs' Complaint in the instant action, which pleads a myriad of Cross-Claims against the Cellar Defendants. *See* Great Northern's Answer (Doc. 23). The Cross-Claims asserted against the Cellar Defendants include the following causes of action: Breach of Contract; Conversion; Unjust Enrichment; Negligent Misrepresentation; Negligence; Gross Negligence; Bailment; and Breach of Fiduciary Duty. *See id*. The averments and causes of action set forth in these Cross-Claims are virtually identical to the averments set forth in the Complaint which Great Northern filed against the Cellar Defendants in the Pennsylvania State Court action. A true and correct copy of the Complaint Great Northern filed in the Pennsylvania State

Court action is attached hereto as Exhibit 1. The only material difference between Great Northern's Cross-Claims in this action and the Complaint filed in Pennsylvania is Great Northern failed to attach the contracts that the Buergers entered into with the Cellar Defendants to the Cross-Claim (even though the contracts are referenced in the Cross-Claims). These contracts are attached hereto as Exhibits "A" and "B" to Exhibit 1.

In or around 2006, the Buergers entered into a contract with the Cellar Defendants related to the wine consulting services the Cellar Defendants were providing to the Buergers, which included the storage of wine at Defendant Domaine Saint Louis, LLC facility.[1]  *See* Exhibit 1 at ¶ 11 and Exhibit "A."  This contract contains a broad waiver of subrogation clause, which provides that risk for any loss or damage arising out of the Agreement shall lie with the Buergers' homeowners' insurer:

> Customer has sufficient homeowners' insurance or similar insurance, a copy of the policy for which is attached to this Agreement, that provides coverage for wine stored outside the home, and said insurance shall cover any and all loss of wine sustained by Customer while such wine is in Cellar's storage facility, Alternatively, except as provided in this Section 3, Customer is solely and personally responsible for any and all risk of loss of wine stored at Cellar's wine storage facility pursuant to this Agreement. **Customer agrees that any and all insurance to be carried by Customer under the terms of this option shall contain a clause whereby the insurer waives its rights to subrogation against Cellar, its agents, officers and employees for any loss or damage to its property or to the property of others covered by insurance.**

---

[1] While the contract is primarily related to the storage of wine it expressly provides: "The terms of **this Agreement shall apply to any services (in addition to the storage of goods) rendered to Customer by Cellar, including, but not limited to,** pick-up and/or delivery of goods, handling, repackaging and inventory, except as otherwise provided in such additional agreement as may be applicable to such services." See Exhibit 1 at Exhibit "A" at ¶ 6 (h).

See Exhibit 1 at Exhibit "A" at ¶ 3(a) (emphasis added). The contract also provided the Buergers with the option to obtain (additional) insurance coverage for the wine through the Cellar Defendants, but the Buergers' opted to obtain coverage solely through their homeowners' insurer (Great Northern). In making this decision the Buergers specifically agreed to obtain coverage that contained a waiver of subrogation rights as to the Cellar Defendants. *See id*.

In or around 2012, the Buerger's entered into a second contract with the Cellar Defendants to store wine at Domaine New York, LLC's facility in New Jersey. *See id*. at ¶ 12 and Exhibit "B" thereto. This second contract again provided the Buergers with the option to obtain insurance coverage for the wine stored at the New Jersey facility through the Cellar Defendants, but the Buergers again elected to obtain their own coverage. *See id*. at Exhibit "B" at ¶ 16 (under the subheading "Insurance"). This second contract also contains a broad waiver of subrogation clause and the Buergers expressly agreed to indemnify the Cellar Defendants against "the assertion of any claim of subrogation against [the Cellar Defendants] any of its agents by any third party (including but not limited to any insurance company) arising out of or with respect to this Agreement and the performance of any obligation hereunder." *See id*. at Exhibit B thereto at ¶12. The agreement further expressly provides that any potential damages payable to the Buergers relating to the agreement "shall be net of any insurance proceeds payable to [the Buergers] in respect of such damage or loss."

The Cellar Defendants now file the instant motion to dismiss Defendant Great Northern's Cross-Claims as the same are barred by the waivers of subrogation contained in the two contracts that Great Northern alleges governed the business relationships between the Cellar Defendants and its insureds. Alternatively, the Cellar Defendants move to dismiss the counts for Gross Negligence and Unjust Enrichment, because those two claims as a matter of law cannot be sustained against the Cellar Defendants.

## II.  QUESTIONS PRESENTED

Should Great Northern's Cross-Claims be dismissed in their entirety, with prejudice, for failure to state a claim upon which relief can be granted because the contracts which serve as the basis of Great Northerns' claim contain valid and enforceable waiver of subrogation clauses that expressly bar Great Northern from recovering damages sought in this case?

*Suggested Answer:*    Yes.

Should Count III of Great Northern's Cross-Claims be dismissed because Missouri law does not permit a party to bring a claim for Unjust Enrichment where the claim is the subject of a legal written contract and subsumed within Plaintiff's breach of contract claim, as is the case here?

*Suggested Answer:*    Yes.

Should Count VI of Great Northern's Cross-Claims be dismissed because no cause of action for gross negligence exists under Missouri law?

*Suggested Answer:*    Yes.

## III.  LEGAL ARGUMENT

### A.  Standard of Review

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A party need not provide specific facts in support of its allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests,

and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008)(citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a party to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A pleading "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Id*. at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id*. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id*; Fed. R. Civ. P. 8(a)(2). Materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

### B. Applicable Law

The initial contract the Buergers entered into with the Cellar Defendants expressly provides that it is governed by Missouri law. *See* Exhibit 1 at Exhibit "A" at ¶ 6(k). The vast majority of the services provided to the Buergers by the Cellar Defendants were provided in Missouri by individuals and entities who are Missouri residents. As Great Northern filed its claims in Pennsylvania, it is anticipated that Great Northern may argue that Pennsylvania law applies to the instant dispute. Nevertheless, for the purposes of this motion Great Northern does not matter which state's law is applied as there is no real conflict between Pennsylvania and Missouri law as to the issues presented herein – both states recognize the validity of waiver of subrogation clauses; both Missouri and

Pennsylvania law bar unjust enrichment claims where there are actual contracts; and neither Missouri nor Pennsylvania recognizes a cause of action for Gross Negligence. This Memorandum of Law analyzes the claims applying Missouri law and contains footnotes to applicable Pennsylvania law.

> **C.      Great Northern's Cross-Claims are barred by the waiver of subrogation clauses contained in the contracts between the Cellar Defendants and Great Northern's subrogor.**

All of Great Northern's claims advanced herein arise out of a business relationship between Great Northern's subrogors, the Buergers, and the Cellar Defendants. This business relationship is governed by two contracts entered into between these parties in 2006 and 2012. *See* Great Northern's Answer (Doc. 23) at ¶¶ 114 - 115. While the contracts are referenced in Great Northern's Cross-Claim, neither is attached – likely because both contain express provisions barring the cross-claims that Great Northern asserts within the pleading. *See* Exhibit 1 at Exhibit "A" at ¶ 3(a) and Exhibit "B" ¶¶ 12, 13, and 16.

Pursuant to Missouri law, waiver of subrogation clauses are valid and enforceable as to third parties. *See*, *e.g.* **[Butler v. Mitchell–Hugeback, Inc., 895 S.W.2d 15 (Mo. 1995)](...)** (*en banc*); *Disabled Veterans Trust v. Porterfield Const., Inc.,* 996 S.W.2d 548, 552 (Mo.App.1999).[1] A waiver of subrogation provision " 'in effect simply require[s] one of the parties to the contract to provide [property] insurance for all of the parties.' " *Nodaway Valley Bank v. E.L. Crawford Constr., Inc.,* 126 S.W.3d 820, 828 (Mo. App. 2004) (quoting *Tokio Marine & Fire Ins. Co., Ltd. v. Employers Ins. of Wausau,* 786 F.2d 101, 105 (2d Cir.1986)). The objective of a waiver of

---

[1] The Superior Court of Pennsylvania has held that such waivers are "enforceable irrespective of whether the insurer which seeks to avoid its enforcement was a party to the contract of which the provision is a part, or whether the insurer had notice of, or consented to, the provision." *Universal Underwriters Ins. Co. v. A. Richard Kacin, Inc.*, 916 A.2d 686, 694 (Pa. Super. 2007). "It is clear that, under Pennsylvania law, subrogation is a contingent and derivative right, and a subrogee stands in the shoes of the subrogor and 'can only recover damages when his subrogor has a legally cognizable cause of action against a third party.' " *Universal Underwriters Ins. Co. v. A. Richard Kacin, Inc.*, 2007 PA Super 13, ¶ 20, 916 A.2d 686, 693 (2007)(quoting *Kiker v. Pennsylvania Fin. Responsibility Assigned Claims Plan*, 742 A.2d 1082, 1086 (Pa. Super. Ct. 1999).

subrogation clause is to enhance the effectiveness of insurance procurement clauses. *Id.* Insurance procurement clauses reflect an " 'intention on the part of the parties to relieve each other of liability and look to only one insurer to bear the risk ... instead.' " *Id.* (quoting *Acadia Ins. Co. v. Buck Constr. Co.,* 756 A.2d 515, 519 (Me. 2000) (citation omitted)). The waiver of subrogation clause thus " 'avoids *both* parties having to face potential liability for the *same* risk.' " *Id.* (quoting *Acadia Ins. Co.,* 756 A.2d at 519).

The rights of a subrogee can be no greater than the rights of the subrogor. Thus, in an action based on subrogation, the defendant may assert any defense that would be available in an action directly by the subrogor, i.e., the original debtor. **[Roosevelt Bank v. Moore, 944 S.W.2d 261 (Mo. Ct. App. 1997](#)**0). Consistent with this principle of law, contract provisions waiving subrogation rights are valid and enforceable as to third-party insurers. *Disabled Veterans Trust, supra.*[1]

In *Disabled Veterans Trust, supra.,* the Missouri Court of Appeals found that a "waiver of subrogation" clause in a lease prevented a landlord (Franklin) from recovering damages stemming from a fire caused by its tenant (Porterfield). 996 S.W.2d at 549**.** The "Waiver of Subrogation" clause at issue in that case provided that:

> As part of the consideration for this lease, each of the parties hereto does hereby release the other party hereto from all liability for damage due to any act or neglect of the other party (except as hereinafter provided) occasioned to *property owned* by said parties which is or might be incident to or the result of a fire or any other casualty against loss for which either of the parties is now carrying or hereafter may carry insurance; provided, however, that the releases herein contained shall not apply to any loss or damage occasioned by the willful, wanton or premeditated negligence of either of the parties hereto, and the parties hereto further covenant that any insurance they obtain on their respective properties shall

---

[1] *But see*, *Cont'l Ins. Co. v. Washeon Corp.,* 524 F. Supp. 34, 36 (E.D. Mo. 1981) (applying Louisiana and not Missouri law) (finding that insurer because had no knowledge of plaintiff's insured's waiver of subrogation, the plaintiff's action as subrogee is not barred by the agreement between defendant and plaintiff's insured). The case was decided based on *Alamo Chemical Transportation Co. v. M/V Overseas Valdes*, 469 F.Supp. 203, 212 (E.D.La.1979) and the holding is inconsistent with the holdings of the precedential opinions from the Missouri appellate courts cited elsewhere herein.

> contain an appropriate provision whereby the insurance company, or companies, consent to the mutual release of liability contained in this paragraph.

*Id.* at 550 (emphasis in original). The dispute regarding the meaning of this provision revolved around the fact that: "Franklin attempt[ed] to limit the words 'property owned' to premises leased by Porterfield. Porterfield, conversely, argued that by utilizing the term 'property owned,' it was Franklin's intent that the clause apply to the entire building, not just to the leased premises." *Id* at 552.

The court first held that "[w]aiver of subrogation clauses are valid and enforceable" and then found "the term 'property owned' to be an all-encompassing term which demonstrates Franklin's intent to apply the waiver of subrogation to damage to the entire building, not merely damage to the leased premises." *Id*. Thus, it had little difficulty upholding the lower court's grant of summary judgment to Porterfield.

Similarly in *Butler, supra*., a case the Court relied upon in *Disabled Veterans*, the Missouri Supreme Court confronted a warehouse owner's (Butler) claims arising out of 1990 collapse of the warehouse against, among others, the architect of the warehouse's 1991 retrofit (Mitchell). Id. at 17. The lower court had granted summary judgment to Mitchell based on certain of subrogation waiver clauses. *Id*. One of the clauses at issue provided as follows:

> 11.3.7 Waivers of Subrogation. The Owner [Butler] and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect [Mitchell], Architect's consultants, ... for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this paragraph 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary.

*Id*. at 20-21. The Court confirmed that waivers of subrogation are effective and enforceable, but held that the language of the waiver at issue was limited to the "the value of the Work." *Id*.

(stating that "the obvious meaning of the quoted provisions of article 11.3.7 is that the waiver of subrogation is only effective to the extent of the value of the 'Work'"). Hence, it affirmed the trial court's summary judgment in favor of Mitchell, but modified it to hold that Butler waived its rights to recovery against Mitchell only to the extent of the value of the "Work" as defined by the contract. *Id*. at 21-22.

In short, there is no doubt that waivers of subrogation are enforceable in Missouri to the same extent as any other contract and the only way a third-party can bring a subrogation claim on behalf of a subrogor who entered into a contract containing a waiver of subrogation clause is if the waiver of subrogation clause in said contract is not broad enough to cover the subrogated claims.

The waiver of subrogation clauses herein are broad and encompass Great Northern's claims. Thus, pursuant to the holdings in *Butler* and *Disabled Veterans Trust,* Great Northern's claims are barred. The first agreement the Buergers entered into with the Cellar Defendants provides that any insurance coverage that the Buergers obtain "shall contain a clause whereby the insurer waives its rights to subrogation against Cellar, its agents, officers and employees <u>for **any loss** or damages to its property or to the property of others **covered by insurance**</u>." *See* Exhibit 1 at Exhibit "A" thereto at ¶3(a) (emphasis added). This clause is even broader than the clause in *Disabled Veterans Trust*, which was held to apply to all "property owned" by either party. The subrogation clause in the agreement between Cellar Defendants and the Buergers applies not only to all property but more broadly to "any loss…covered by insurance." Accordingly, under Missouri law, this clause bars Great Northern's claims because the claims are for a "loss" allegedly covered by the insurance policy the Buergers obtained with Great Northern and the contract bars subrogation claims for "any loss…covered by insurance." Id.

Likewise, Missouri law also supports the conclusion that the second contract between the Buergers and the Cellar Defendants for wine storage in New Jersey bars Great Northern's claims. It provides, in pertinent part, that the Buergers agree to indemnify the Cellar Defendants against "**the assertion of any claim of subrogation** against [Cellar] any of its agents by any third party (including but not limited to any insurance company) **arising out of or with respect to this Agreement** and the performance of any obligation hereunder." *See* Exhibit 1 at Exhibit B thereto at ¶12. As Great Northern pled the Agreement as a basis for its claims, the claims therefore arise out of the Agreement. *See* Great Northern's Answer (Doc. 23) at ¶ 115. Given that the waiver of subrogation portion of the Agreement provides, in no uncertain terms, that the Buergers must indemnify the Cellar Defendants in connection with "the assertion of any claim of subrogation" against the Cellar Defendants by "any insurance company…with respect to the Agreement", this Agreement also bars the Cross-Claims Great Northern asserts herein. Great Northern is an "insurance company" that has asserted a "claim of subrogation…with respect to the agreement," because the alleged conversion of the wine directly relates to the Agreement for the storage of the wine.

In summary, Great Northern's claims are barred by waivers of subrogation which are valid and enforceable under Missouri law. Great Northern attempted to avoid having to address this fatal flaw in its cross-claims during the pleadings stage by not attaching to the pleading the contracts it relies on in its cross-claims so as to create the illusion that the pleading states a claim upon which relief can be granted when, in reality, all the claims are barred by the very contracts upon which they are premised. Nevertheless, this Court should not permit Great Northern to proceed on these claims, which cannot be sustained as a matter of law, as the agreements which are referenced and relied upon by Great Northern bar the same.

  **D. Great Northern's Claim for unjust enrichment must be dismissed with prejudice because Missouri law does not permit quasi-contractual claims in matters involving express contracts.**

It is a well-settled principle of law that implied contract claims arise only where there is no express contract. *A& L Underground, Inc. v. Leigh Const., Inc.,* 162 S.W.3d 509, 511 (Mo. App. 2005) (explaining that where an express contract exists, there is no need to imply one). Accordingly, a party cannot recover under an equitable theory such as unjust enrichment when she has entered into an express contract for the very subject matter for which she seeks to recover. *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. App. 2010).

Great Northern's Cross-Claim seeks to recover the same damages under both a breach of express contract theory and an unjust enrichment theory. Under Missouri law, this is impermissible and the unjust enrichment claim must be dismissed with prejudice.[1]

  **E. Great Northern's Claim for gross negligence must be dismissed because the law recognizes no such cause of action.**

Great Northern's Cross-Claim for "gross negligence" does not state a claim upon which relief can be granted because Missouri courts do not recognize degrees of negligence at common law. *See, e.g., DeCormier v. Harley-Davidson Motor Co. Grp., Inc.,* 446 S.W.3d 668, 671 (Mo. 2014); *Fowler v. Park Corp.,* 673 S.W.2d 749, 755 (Mo. banc 1984); *Warner v. Sw. Bell Tel. Co.,* 428 S.W.2d 596, 603 (Mo.1968); *Edwards v. Gerstein,* 363 S.W.3d 155, 165 (Mo.App.2012). Accordingly, no claim for gross negligence exists under Missouri law[2] and this

---

[1] Pennsylvania law also precludes this claim under the circumstances. A cause of action for unjust enrichment cannot be brought where there is a legal contract. *Area Sch. Dist. v. Skepton*, 586 Pa. 513, 520-21, 895 A.2d 1250, 1254 (2006) (quoting *Third National & Trust Company of Scranton v. Lehigh Valley Coal Company*, 353 Pa. 185, 44 A.2d 571, 574 (1945)); *see also Schott v. Westinghouse Electric Corporation*, 436 Pa. 279, 259 A.2d 443, 448 (1969); *Wingert et al. v. T.W. Phillips Gas & Oil Company*, 398 Pa. 100, 157 A.2d 92, 94 (1959) ("[The doctrine of unjust enrichment] applies only to situations where there is no legal contract."); *Durham Terrace, Inc. v. Hellertown Borough Authority*, 394 Pa. 623, 148 A.2d 899, 904 (1959).

[2] No such cause of action is recognized by Pennsylvania law: "[T]here is no separate cause of action under Pennsylvania law for gross negligence." *Spence v. ESAB Group, Inc.*, 623 F.3d 212, 215 n.2 (3d Cir. 2010) (citing *Hunter v. Squirrel Hill Assocs., LP*, 413 F.Supp.2d 517, 520 n.2 (E.D. Pa. 2005) ("While Pennsylvania courts

claim is merely duplicative of the claim that Great Northern plead alleging ordinary negligence. Therefore, this count should be dismissed with prejudice.

## IV. CONCLUSION

Based on the facts and case law referenced above, Great Northern's Cross-Claims should be dismissed with prejudice as they constitute subrogation claims which are barred by valid and enforceable waiver of subrogation clauses set forth in the contracts upon which Great Northern's purported claims are based. Accordingly, the Defendants Cellar Advisors, LLC, Domaine Saint Louis, LLC, Domaine New York, LLC and Marc Lazar respectfully request that this Honorable Court enter an Order dismissing Great Northern's Cross-Claims in their entirety, with prejudice, or alternatively, enter an Order dismissing Counts III and VI from Great Northern's Cross-Claims with prejudice.

---

acknowledge differing standards of care, they do not recognize degrees of negligence as separate causes of action.")); *see also Floyd v. Brown & Williamson Tobacco Corp.*, 159 F.Supp.2d 823, 828 (E.D. Pa. 2001) (dismissing plaintiff's separately pleaded claim for gross negligence after concluding that under Pennsylvania law 'gross negligence' refers to a standard of care, rather than to a separate claim").

Respectfully submitted,

**LITCHFIELD CAVO LLP**

By: */s/ Brian K. McBrearty*
Brian K. McBrearty #36143
222 South Central Avenue, Suite 200
St. Louis, MO 63105
(314) 725-1227 phone
(314) 725-3006 fax
mcbreartyb@litchfieldcavo.com
**Attorneys for Defendants,**
**Cellar Advisors, LLC,**
**Domaine Saint Louis, LLC,**
**Domaine New York, LLC and**
**Marc Lazar**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was electronically filed on this 20th day of December, 2017.

*/s/ Brian K. McBrearty*