IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NETHERLANDS INSURANCE COMPANY, et al | ) ) ) | No.: 4:17-cv-02585-PLC |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CELLAR ADVISORS, LLC, et al., | ) ) ) | |
| Defendants | ) | |

**DEFENDANT AND CROSS-CLAIM PLAINTIFF GREAT NORTHERN INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendant and Cross-Claim Plaintiff, Great Northern Insurance Company, hereby files its Memorandum in Opposition to Defendants' Motion to Dismiss, and for the reasons set forth below, requests this Court deny Defendants' Motion:

**I.      INTRODUCTION**

The same arguments made by Cellar Defendants[1] here in their Motion to Dismiss have previously been rejected by the Pennsylvania Court of Common Pleas.  In the Pennsylvania state court action, which was the impetus to this litigation in the Eastern District of Missouri, Cellar Defendants raised the same three arguments it now makes before this Court seeking dismissal of Great Northern Insurance Company's ("Great Northern") claims.  There, in the Pennsylvania action, the court denied each of Cellar Defendants' arguments and their request for dismissal.

The only material difference between Cellar Defendants' arguments in Pennsylvania and now before this Court, is that here they argue under both Missouri and Pennsylvania law.  This

---

[1] Cross-Claim Defendants Domaine Saint Louis, LLC, Domaine New York, LLC, Cellar Advisors, LLC, and Marc Lazar will herein be referred collectively as "Cellar Defendants."

makes no difference, because if this Court applies Missouri law there should be no change in the outcome—the storage agreements relied on by Cellar Defendants cannot bar Great Northern's claims, and Cellar Defendant's Motion to Dismiss should be denied.

By way of background, Great Northern initiated an action against Cellar Defendants in Pennsylvania state court in the Court of Common Pleas for Montgomery County. It filed its complaint on December 2, 2016.

Cellar Defendants filed preliminary objections against Great Northern's complaint, seeking its dismissal. Under Pennsylvania state law preliminary objections serve as a procedural equivalent to a F.R.C.P. 12(b)(6) motion, whereby a party tests the legal sufficiency of a pleading through preliminary objections. *See*, Pa. R. Civ. P. 1028; *Retzler v. Bristol Tp.*, 2009 WL 691997, at *1 fn. 1 (E.D. Pa. March 9, 2009).

Cellar Defendants raised the same arguments there, as they do here—claiming contractual waivers bar Great Northern's claims, and that claims for unjust enrichment and gross negligence cannot be asserted. The basis for Cellar Defendants' arguments here are identical.

Not only have Cellar Defendants raised these same arguments before, they have taken numerous attempts to try and have Great Northern's claims dismissed in Pennsylvania. *See*, Exhibit A, Docket, Case No. 2016-15600, Pa. Ct. of Common Pleas. All of these attempts have proven futile.

To gain an appreciation for the efforts Cellar Defendants have gone to evade litigating the Pennsylvania matter, Great Northern provides a procedural background of that litigation herein. First, Cellar Defendants filed preliminary objections on January 26, 2017, seeking dismissal of Great Northern's claims based on, *inter alia*, contractual waiver, unjust enrichment, and gross negligence arguments, which on June 19, 2017, the Pennsylvania state court rejected and denied.

*See*, Exhibit B, Order Denying Preliminary Objections; *see also*, Exhibit A, Docket. Cellar Defendants then sought reconsideration of the denial, narrowing their arguments to jurisdictional challenges. The Pennsylvania court once again rejected Cellar Defendants' arguments, and denied their motion for reconsideration on October 2, 2017. *See*, Exhibit C, Order Denying Motion for Reconsideration. Then, after the Pennsylvania court denied their motion for reconsideration, Cellar Defendants sought an interlocutory appeal. *See*, Exhibit D, Petition for Interlocutory Appeal. This was also denied, and on December 11, 2017, the Pennsylvania appellate court rejected Cellar Defendants' petition for appeal. *See*, Exhibit E, Order Denying Petition for Interlocutory Appeal. As of this date, Cellar Defendants have still not filed their Answer in the Pennsylvania action, and have had their attempts to dismiss Great Northern's claims denied on three separate occasions.

Because of the Pennsylvania action, liability insurers for Cellar Defendants—Netherlands Insurance Company ("Netherlands") and Hawkeye Security Insurance Company ("Hawkeye")—filed their action seeking a declaratory judgment from this Court. *See*, Complaint (Doc. No. 1). The basis for Netherlands and Hawkeye's action is to avoid providing coverage to Cellar Defendants for the suit filed by Great Northern in Pennsylvania. Netherlands and Hawkeye filed claims against Cellar Defendants and also named Great Northern as a defendant. Because of Great Northern's interest in the matter, Great Northern has filed its cross-claims in this Court against Cellar Defendants.

**II.    FACTS**

Great Northern's insureds, Reid Buerger and Krista Buerger (the "Buergers" or "Great Northern's insureds") suffered substantial harm when they relied on the advice and consulting services of Cellar Advisors, LLC ("Cellar Advisors"), Domaine Saint Louis, LLC, f/k/a Cellar,

3

LLC ("Domaine Saint Louis"), Marc Lazar ("Lazar"), and Domaine New York, LLC ("Domaine New York") (collectively, the "Cellar Defendants"). These services included the advising, selecting, purchasing, transporting, and storing of the Buergers' wine collection, consisting of more than 10,000 bottles of wine.

The Cellar Defendants at various times were retained by the Buergers, or designated on behalf of one or more of the Cellar Defendants, to provide these services for the Buergers. *See*, Great Northern's Answer, Affirmative Defenses, and Cross-Claims (Doc. No. 23). Beginning in 2005, some of the Cellar Defendants would attend auctions or engage in direct purchases of wine on the Buergers' behalf. *Id.* at ¶ 116. The Cellar Defendants purchased the wine by either using the Buergers' credit card, or invoicing the Buergers for the purchased wine directly. *Id.* at ¶ 117. Invoices would be sent by Cellar Defendants to the Buergers identifying the wine allegedly purchased. *Id.* at 118. The purchase, transportation, and storage of the wine was arranged and handled by Cellar Defendants. *Id.* at 119.

Over the life of the relationship, the Cellar Defendants claimed to have purchased and/or stored approximately 10,000 bottles of wine on the Buergers' behalf. *Id.* at 120. In 2014, the Buergers terminated their business with all of the Cellar Defendants and requested their wine collection be returned to their possession. *Id.* at 122.

During the process of having their wine transferred from Cellar Defendants' facilities, the Buergers found discrepancies between the wine Cellar Defendants claimed to have purchased and stored on behalf of the Buergers, and the wine present in the Cellar Defendants' facilities. *Id.* at 123-25. More than 1,300 bottles of wine that Cellar Defendants claimed to have purchased for the Buergers and/or stored on the Buergers behalf could not be accounted for by the Cellar Defendants. *Id.* at 23. The missing wine was valued at over $1.9 million.

Indeed, when the Buergers attempted to retrieve their wine in 2014, the inventory records provided by Cellar Defendants failed to include numerous bottles which Cellar Defendants allegedly purchased and invoiced the Buergers for. *Id.* at 123. In other words, numerous instances exist where Cellar Defendants invoiced the Buergers for bottles of wine which Cellar Defendants claimed to have purchased on the Buergers' behalf, however particular bottles could not be found in Cellar Defendants' storage facilities or in their inventory records.

As a result of the missing wine, the Buergers filed an insurance claim with cross-claim plaintiff Great Northern. Great Northern provided property insurance to the Buergers, and pursuant to their policy of insurance paid the Buergers $1,976,815.07 for the missing wine.

### III.  ANALYSIS

Cellar Defendants make two misleading arguments in their Motion to Dismiss Great Northern's cross-claims.

First, they attempt to argue that the storage agreements they cite are applicable to the full scope of the relationship between Cellar Defendants and the Buergers (advising, selecting, purchasing, transporting) and not merely storage. This is incorrect.

The storage agreements apply only to storage of wine, not the various other conduct Great Northern alleges in its cross-claims. Cellar Defendants make the assertion that "This business relationship [between the Buergers and Cellar Defendants] is governed by two contracts entered into between these parties in 2006 and 2012." *See*, Motion to Dismiss (Doc. No. 26), p. 7. However, the two storage agreements deal only with storage of wine—they have no relevance on the number of other services alleged in Great Northern's cross-claims—and limited in time.

For example, a large portion of the unaccounted for wine was supposedly purchased by the Cellar Defendants on the Buergers' behalf. The Cellar Defendants invoiced the Buergers and

5

supposedly placed the bottles into one of their storage facilities. However, when the relationship was terminated in 2014, many of these supposedly purchased bottles were missing. Great Northern anticipates that discovery will reveal that many, if not all of the bottles which Cellar Defendants claimed to have purchased (and subsequently charged the Buergers for) were never purchased, or never placed into storage. Such conduct would be outside the language of the storage agreements, since the bottles were never in storage.

Second, Cellar Defendants attempt to mislead this Court to believe that the two storage agreements apply to all four of the Cellar Defendats. This is not so. The 2006 storage agreement was between only Domaine Saint Louis (formerly known as Cellar, LLC) and the Buergers (the "2006 storage agreement"). *See*, Exhibit F, 2006 Storage Agreement. No other Cellar Defendant (i.e., Cellar Advisors, Marc Lazar, or Domaine New York) was part of that agreement. Likewise, the 2014 storage agreement was between only Domaine New York and the Buergers. *See*, Exhibit G, 2012 Storage Agreement. No other Cellar Defendant (i.e., Cellar Advisors, Marc Lazar, Domaine Saint Louis) was part of that agreement.

For Cellar Defendants to now claim that these two storage agreement governed all aspects of the relationships between the four Cellar Defendants and the Buergers is indisputably false. Not only are the storage agreements limited in scope, but they involve only two of the four Cellar Defendants.

To provide an appropriate view of the issues before the Court, it is necessary to untangle Cellar Defendants' efforts to merge the parties and cross-claims in this litigation. Pointedly, there are four separate entities: (1) Cellar Advisors; (2) Domaine Saint Louis; (3) Marc Lazar; and (4) Domaine New York. The conduct Great Northern has alleged in its cross-claims against the Cellar Defendants includes advising, selecting, purchasing, selling, transporting, and storing

6

wine—not merely wine which was being stored.  Additionally, Great Northern's claims are not limited to breach of contract, but also: (1) conversion, (2) breach of contract, (3) unjust enrichment, (4) negligent misrepresentation, (5) negligence, (6) gross negligence, (7) bailment, and (8) breach of fiduciary duty.

At this stage in the litigation it is unclear the extent of each defendants' role in failing to provide the Buergers with their complete wine collection.  Discovery is needed to ascertain each Cellar Defendants' liability, and what significance either storage agreement will ultimately have.  It is plausible that the 1,300 bottles of missing wine were (a) never purchased despite Cellar Defendants' invoices; (b) never placed into a storage facility; (c) removed from storage without the Buergers' permission; (d) inadvertently placed in another customer's collection; (e) placed in a facility not governed by the storage agreements, and/or (f) placed in a storage facility outside the operative time in which the storage agreements were enforceable.  The storage agreements would not govern any of these activities.

At bottom, Cellar Defendants' attempt to use the two storage agreements with Domaine Saint Louis and Domaine New York as a "catchall" defense is simply misguided.

A. **Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6).  The factual allegations of a complaint are assumed true and construed in favor of the plaintiff.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  To survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007). "A motion to dismiss should be granted 'as a practical matter . . . only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief.'" *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (quoting *Frey v. Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)). The issue in determining a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim." *Scheuer*, 416 U.S. at 236.

      B.    **The Storage Agreements Do Not Bar Great Northern's Claims, and the Waivers of Subrogation are Inapplicable**

As discussed above, Cellar Defendants' reliance on the two storage agreements is overstated. The agreements deal solely with issues of storage and relate only to Domaine Saint Louis and Domaine New York—not Marc Lazar or Cellar Advisors.

There are numerous factual and legal questions that must be answered before a proper analysis of the application of either storage agreement, as well as their so-called "waiver" provisions, can take place. If, for example, the 1,300 of unaccounted bottles of wine were never placed into storage facilities, then the contracts are irrelevant. Unless Cellar Defendants can establish that these wine bottles were placed into storage in one of the facilities under the two storage agreements, the agreements hold no bearing on this litigation.

Further, there are legal considerations which bar the application of any "waiver" provision at this stage.

Exculpatory provisions like those argued for by Cellar Defendants cannot be enforced when the defendant has engaged in intentional misconduct or gross negligence. *Alack v. Civ. Tanny Intern. Of Missouri, Inc.*, 923 S.W.2d 300, 337 (Mo. 1996); *Sasco v. Wells Fargo Alarm*

8

*Servs., Inc.*, 969 F. Supp. 535 (E.D. Mo. 1997) (subrogation case in which the court applied Missouri law and found that contractual indemnification provision was "without legal effect to exonerate defendant of liability for intentional loss, such as . . . fraud . . . or for gross negligence . . ."). Factual discovery will be necessary to determine the extent that Cellar Defendants intentionally or negligently allowed the wine to go missing from the inventory when the Buergers sought its return.

Further, the waiver provisions are ambiguous as to their language and application. Exculpatory provisions, like the waivers relied on by Cellar Defendants, are to be strictly construed against the party seeking their benefit, with clear and explicit language required. *Hornbeck v. All Am. Indoor Sports, Inc.*, 898 S.W.2d 717, 721 (W.D. Mo. 1995); *Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 852 (Pa. Super. 2012).

Based on the language of the provisions in each of the two storage agreements they are ambiguous as to their application. The provisions were meant only to relate to physical damage inflicted on the bottles of wine—not misallocation, conversion, or negligent tracking of wine in Cellar Defendants' inventory.

Cellar Defendants seek to avoid liability for their negligence in tracking/maintaining their inventory, and/or for their conversion of the Buergers' wine by relying on the storage agreements. This was not the intent of the limitation and insurance language found in the two agreements. Rather these provisions were incorporated in the agreements solely to deal with damage inflicted upon the bottles stored in Domaine Saint Louis or Domaine New York's facilities (e.g., fire, water damage, temperature issues, breakage, etc.).

Particularly, in the provision Cellar Defendants' rely on from the 2006 storage agreement, it states the Buergers would obtain insurance which:

9

> Shall contain a clause whereby the insurer waives its rights to subrogation against Cellar [Domaine Saint Louis], its agents, officers and employees for any loss or damages to its property or to the property of others covered by insurance.

*See*, Motion to Dismiss (Doc. No. 36), p. 10 (citing Exhibit 1, its Exhibit B, ¶ 3(a)). What Cellar Defendants conveniently leave out from their quoted language is the preceding sentence of this provision, which limits its application to the wine only while it is stored in Domaine Saint Louis' facility:

> . . . said insurance shall cover any and all loss of wine sustained by Customer **while such wine is in Cellar's [Domaine Saint Louis'] storage facility**

Exhibit G, 2012 Storage Agreement, ¶ 3(a). The operative terms emphasize that this insurance allocation provision implies that the wine is actually "in Cellar's [Domaine Saint Louis'] facility." This indicates it was meant to cover damage inflicted on the wine (e.g., fire damage, water damage, temperature issues, breakage, etc.), not matters where Domaine Saint Louis misplaces or fails to store the wine altogether—for in those circumstances the wine cannot said to be "in Domaine Saint Louis' facility."

Likewise, the provisions of the 2012 storage agreement, relating to insurance and limitations of liability deal with damage inflicted upon the bottles stored by Domaine New York—not when Domaine New York misplaces or fails to store the wine. The provision relied on by Cellar Defendants in their Motion states the Buergers would indemnify Domaine New York against:

> the assertion of any claim of subrogation against [Cellar] any of its agents by any third party (including but not limited to any insurance company) arising out of or with respect to this Agreement and the performance of any obligation hereunder.

*See*, Motion to Dismiss (Doc. No. 36), p. 11 (citing its Exhibit 1, at Exhibit B, ¶ 12). Clearly, this provision limits itself to claims "arising out of or with respect to" the agreement itself. Further, this provision carves out an exception to its application (which Cellar Defendants

10

ignore) whereby it will be inoperative in matters of gross negligence or intentional misconduct.[2] Additionally, the insurance provision in this agreement contains similar language as the 2006 storage agreement, qualifying that the insurance under the agreement was intended for wine "while such wine is in [Domaine New York's] facilities." *Id.* at ¶16. Again, indicating that the insurance considered by the agreement was for damage inflicted upon bottles presently stored in the facility—not misplaced or never placed into storage. For if wine is misplaced or never placed into storage, it cannot be said that it is "in Domaine New York's" facilities.

Even if the waiver provisions were substantively applicable, they could not apply to all of the Cellar Defendants – Only Domaine Saint Louis and Domaine New York.

C. **The Agreements Relied on By Cellar Defendants Are Limited Only to Items *Actually Stored* with Domaine Saint Louis and/or Domaine New York**

The cross-claims brought by Great Northern against the four Cellar Defendants arise from conduct involving the advising, selecting, purchasing, transportation, and storage of wine. The agreements cited by Cellar Defendants and the alleged waivers of subrogation provisions are nothing more than storage agreements. Cellar Defendants' attempts to stretch their application beyond "storage" of the wine is nothing short of an overzealous attempt to exaggerate the relevance.

Each of the two agreements Cellar Defendants rely on in their Motion clearly state that they are storage agreements.

---

[2] The provision relied on by Cellar Defendants begins "**Except in cases of gross negligence or intentional misconduct** of Lessor [Domaine New York]," the Buergers would agree to indemnify Domaine New York under certain circumstances.

Typically a common law claim for gross negligence cannot be pursued in Missouri. *DeCormier v. Harley-Davidson Co. Group, Inc.*, 446 S.W.3d 668 (Mo. 2014). However, this differs from *contractual* gross negligence like at issue here. Specifically, here, Cellar Defendants explicitly agreed that the limitation of liability discussed above will not apply in matters of intentional misconduct or gross negligence. Therefore, under the explicit terms of the agreement, a claim for gross negligence may be pursued since the cause of action arises from the language of the contract itself.

11

The first, between Domaine Saint Louis and the Buergers signed in 2006 has the following title: **Wine Storage Agreement**. *See*, Exhibit F, 2006 Storage Agreement. Indeed, the agreement states throughout its provisions that it relates only to storage of wine. For example, it states:

- "Customer owns wine that Customer wishes *to store* at Cellar's wine storage facility . . ."
- "Cellar is willing to *store* Customer's wine according to the terms and conditions of this agreement . . . "
- "Cellar agrees to *store* Customer's wine at Cellar's facilities according to the terms and conditions of this agreement . . ."

*See,* Exhibit F, 2006 Storage Agreement, pg. 1. No provision discusses purchasing, advising, or selecting wine. Cellar Defendants seemingly recognize the limited scope of this agreement, as they attempt to claim an "Additional Services" provision, which clearly relates to conduct involving the storage of wine, somehow governs the entire relationship between all four Cellar Defendants (including non-storage activities) for an approximately 11 year period between 2005-2014. This "Additional Services" provision involves only conduct that one would expect to directly relate to activities required of any vendor who is storing wine on behalf of a customer: pick-up and/or delivery of goods, handling, repackaging and inventory.

The second agreement Cellar Defendants attempt to rely on was entered into between the Buergers and Domaine New York around 2012. Like the agreement above, it clearly states that it is simply involving *storage* of wine, and nothing more. The agreement is titled: **Wine Storage Locker Agreement**. *See*, Exhibit G, 2012 Storage Agreement, pg. 1. Indeed, this agreement (like the one above) states throughout that it is dealing simply with storage of wine. For example, it states under its "Nature of Services" provision that:

"Lessor [Domaine New York] agrees to provide to Lessee [Buergers] one or more Storage Lockers [] for the storage of wine in a temperature-controlled environment."

12

*Id.* The only other services discussed in the agreement relate to fees to ship wine from a storage locker to a customer's desired location. *Id.* Again, an activity directly related to storing wine at a specific facility, and having no impact on the purchasing, advising, and selecting of wine on behalf of the Buergers.

Based on the plain language of the storage agreements relied upon by Cellar Defendants, it is clear that their terms apply only to storage of wine by the Buergers with Domaine New York and Domaine Saint Louis.

### D. Great Northern's Claims for Unjust Enrichment are Appropriate and Properly Plead in the Alternative

The federal pleading standards allow a party to plead in the alternative. Fed. R. Civ. P. 8(d)(2). This allows a party to assert claims for both breach of contract and unjust enrichment, which Great Northern has properly done.

At this stage of the litigation it is premature to claim that the two storage agreements control the full scope of conduct alleged in Great Northern's cross-claims. The two storage agreements apply only to *storage*, and involve only Domaine Saint Louis and Domaine New York. Great Northern's claims are based not only on wine that was in storage and misplaced but rather on various additional conduct by the Cellar Defendants—including purchasing and transporting the wine. *See*, Great Northern's Answer, Affirmative Defenses, and Cross-Claims, ¶ 135-36 (alleging breach of contract for additional conduct not controlled by the storage agreements). Two storage agreements relevant to only two of the four Cellar Defendants cannot apply to the various conduct alleged by Great Northern, including allegations of unjust enrichment.

Since it is unclear at this stage whether all of the 1,300 bottles of missing wine were stored in either Domaine Saint Louis or Domaine New York's facilities, or whether the two

13

storage agreements are even enforceable, it would be hasty to dismiss either the unjust enrichment or breach of contract claims at this time.

Tellingly, the two cases relied on by Cellar Defendants were decided at the post-trial stage—neither are applicable to a motion to dismiss and the sufficiency of a pleading. *A&L Underground, Inc. v. Lehigh Const., Inc.*, 162 S.W.3d 509 (Mo. App. 2005); *Howard v. Turnbull*, 316 S.W.3d 431 (Mo. App. 2010). It is premature to dismiss an unjust enrichment claim without the benefit of discovery to determine whether a contract controls the precise subject matter under a claim of unjust enrichment. This is particularly true in a matter like the one at hand, where the limited scope of the two storage agreements do not cover the full range of conduct for which Great Northern has brought its claims.

Under Missouri law, to plead a cause of action for unjust enrichment, a plaintiff need only allege: "(1) a benefit conferred by a plaintiff on a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under the circumstances in which retention without payment would be inequitable." *Rental Co., LLC v. Carter Group, Inc.*, 399 S.W.3d 63, 67 (Mo. Ct. App. 2013). Courts have routinely found that a plaintiff may assert claims for *both* unjust enrichment and breach of contract. *Rental Co.*, 399 S.W.3d at 67; *Howard v. Turnbull*, 258 S.W.3d 73, 76 (Mo. Ct. App. 2008). Although a plaintiff may not be able to recover for an identical harm under theories of both unjust enrichment and breach of contract, a plaintiff is free to assert such claims in its pleading. *Franke v. Greene*, 2012 WL 3156577, *5 (E.D. Mo. Aug. 2, 2012) (counterclaim alleging unjust enrichment and breach of contract was permissible pursuant to FRCP 8(d), and both were appropriately plead); see also *Howard v. Turnbull*, 258 S.W.3d 73, 76 (Mo. Ct. App. 2008) (stating that trial court correctly allowed claims for both breach of contract and unjust

14

enrichment because Missouri law permits pleading in the alternative). Factual discovery will provide the necessary support to determine whether either breach of contract, unjust enrichment, or both may proceed to trial.

Similarly, under Pennsylvania law, a party may plead unjust enrichment in the alternative to a contract claim. *Lampl v. Latkanich*, 231 A.2d 890, 893 (Super. Ct. Pa. 1967). "[W]hile a plaintiff cannot ultimately recover on both theories of contract and unjust enrichment, a plaintiff may plead unjust enrichment in the alternative along with a claim for breach of contract." *Duane Morris, LLP v. Todi*, 2002 WL 31053839, at *6 (Pa. Ct. Com. Pl. 2002) (citations omitted).

The storage agreements relied on by Cellar Defendants do not apply to all of the Cellar Defendants, nor do they apply to all of the conduct Great Northern has alleged. Therefore they cannot be enforced to prevent Great Northern's unjust enrichment claim.

### IV. CONCLUSION

WHEREFORE, for the reasons addressed above, Great Northern Insurance Company, respectfully requests that this Court deny Cellar Defendants' Motion to Dismiss.

### V. REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 78 – 4.02, Great Northern Insurance Company respectfully requests oral argument on Cellar Defendants' Motion to Dismiss. Due to the arguments of Cellar Defendants, which seek to merge the entities involved and muddle Great Northern's cross-claims, it is respectfully suggested that oral argument be held.

                Respectfully submitted,

By:   /s/ Michael D. O'Donnell
       Michael D. O'Donnell (*Pro Hac Vice*)
       Paul R. Bartolacci (*Pro Hac Vice*)
       COZEN O'CONNOR
       1650 Market St., Suite 2800
       Philadelphia, PA 19103
       (215) 665-2000
       mdodonnell@cozen.com
       pbartolacci@cozen.com

       Marisa L. Saber (60360MO)
       COZEN O'CONNOR
       123 N. Wacker Dr.
       Suite 1800
       Chicago, IL 60606
       (312) 382-3183
       msaber@cozen.com

       *Attorneys for Great Northern Ins. Co.*

## CERTIFICATE OF SERVICE

I, Michael D. O'Donnell, hereby certify that on this 5th day of January, 2018, I served the foregoing, via this Court's electronic filing system on all attorneys of record.

/s/ Michael D. O'Donnell

LEGAL\33856259\1