UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NETHERLANDS INSURANCE COMPANY and HAWKEYE-SECURITY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) | |
| v. | ) ) | Case No. 4:17-CV-2585 PLC |
| CELLAR ADVISORS, LLC, DOMAINE SAINT LOUIS, LLC, DOMAINE NEW YORK, LLC, and MARC LAZAR, | ) ) ) ) | |
| Defendants/Counterclaimants Crossclaim Defendants, | ) ) ) | |
| and | ) ) | |
| GREAT NORTHERN INSURANCE COMPANY, | ) ) ) ) | |
| Defendant/Crossclaimant. | ) | |

| | | |
|---|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:18-CV-112 PLC |
| CELLAR ADVISORS, LLC, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This action concerns the alleged loss of 1,300 bottles of wine, valued at nearly $2,000,000 and owned by Reid and Krista Buerger ("the Buergers"). Plaintiffs Netherlands Insurance Company and Hawkeye-Security Insurance Company (collectively, "Plaintiffs"), insurers for Defendants/Cross-Claim Defendants Cellar Advisors, LLC, Marc Lazar, Domaine Saint Louis, LCC ("Domaine StL"), and Domaine New York, LLC ("Domaine NY") (collectively, "the Cellar Defendants"), filed a complaint for declaratory judgment against the Cellar Defendants and the Buergers' property insurer, Defendant/Cross-Claim Plaintiff Great Northern Insurance Company, seeking a declaration that their policies did not cover the alleged loss of wine bottles.[1] [ECF No. 1] Great Northern, in turn, filed an eight-count cross-claim against the Cellar Defendants. [ECF No. 35] Pending before the Court is the Cellar Defendants' "Motion to Dismiss Great Northern Insurance Company's Cross-Claims Pursuant to F.R.C.P. 12(b)(6)." [ECF No. 35] For the following reasons the Court grants in part and denies in part Cellar Defendants' motion to dismiss the cross-claim.

I. **Legal Standard**

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Aschroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2006)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When considering a motion to dismiss for failure to state a claim, a

---

[1] The Court consolidated Cincinnati Specialty Underwriters Insurance Company v. Cellar Advisors, LLC, No. 4:18-CV-112-PLC, with Netherlands Ins. Co., No. 4:17-CV-2585-PLC. [ECF No. 59] The instant motion to dismiss was only filed in Case No. 4:17-CV-2585-PLC.

court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Cole v. Homier Distrib. Co., Inc., 599 F.3d 856, 861 (8th Cir. 2010) (quoting Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005)).

II.     **Factual and Procedural Background**

In 2005, the Buergers and Defendant Lazar "began a relationship in which Lazar agreed to advise, select, purchase, transport, and/or store wine on behalf of the Buergers for a fee." [ECF No. 23 at ¶ 111]  In 2006, the Buergers and Defendant Domaine StL[2] entered a "Wine Storage Agreement," relating to the storage of the Buergers' wine in St. Louis, Missouri ("2006 Agreement"). [Id. at ¶ 114]  In 2012, the Buergers and Defendant Domaine NY entered a "Wine Storage Locker Agreement" relating to the storage of wine in New Jersey ("2012 Agreement"). [Id. at ¶ 115]  Both Agreements required the Buergers to insure the wine stored by the Cellar Defendants and contained waiver of subrogation and indemnity clauses.

In addition to storing, transporting, and inventorying the Buergers' wine, the Cellar Defendants attended auctions and/or purchased wine on the Buergers' behalf.  According to Great Northern, the Cellar Defendants either used the Buergers' credit card or invoiced the Buergers following the purchase of wine. [Id. at ¶¶ 117, 118]  The invoices identified the wine allegedly purchased. [Id.]

Between 2005 and 2014, the Cellar Defendants advised the Buergers they purchased and/or stored approximately 10,000 bottles of the Buergers' wine. [Id. at ¶ 120]  In 2014, the Buergers terminated their relationship with the Cellar Defendants. [Id. at ¶ 122]  Following the termination, the Buergers discovered discrepancies between the wine that the Cellar Defendants claimed to have purchased and stored on behalf of the Buergers, and the wine contained in the

---

[2] Defendant Lazar signed the 2006 Agreement as president of Cellar, LLC, a predecessor to Domaine StL. [See ECF Nos. 42-6; 23 at ¶106]

Cellar Defendants' facilities. [Id. at ¶¶ 123-25] More specifically, approximately 1,300 bottles of wine, valued at nearly $2,000,000 were missing from the Buergers' collection. [Id. at ¶ 126]

The Buergers presented a claim for the loss to their property insurer, Great Northern, and Great Northern paid them $1,976,815.07 for the missing wine. [Id. at ¶ 127] Great Northern subsequently filed as the Buergers' subrogee an eight-count complaint against the Cellar Defendants in Pennsylvania state court, asserting claims for conversion, breach of contract, unjust enrichment, negligent misrepresentation, negligence, gross negligence, bailment, and breach of fiduciary duty.

Plaintiffs filed the instant action against the Cellar Defendants and Great Northern seeking a declaration that their commercial general liability insurance and umbrella policies did not require them to defend or indemnify the Cellar Defendant with respect to Great Northern's claims. [Id. at ¶ 5] Great Northern, in turn, filed an eight-count cross-claim against the Cellar Defendants, presenting the same claims that Great Northern is pursuing in the Pennsylvania state court case. [ECF No. 23]

The Cellar Defendants moved to dismiss all eight counts of Great Northern's cross-claim for failure to state a claim pursuant to Rule 12(b)(6).[3] [ECF No. 35] The Cellar Defendants maintain that waiver of subrogation clauses contained in the 2006 and 2012 Agreements bar Great Northern's claims against them. Additionally, the Cellar Defendants urge the Court to dismiss Great Northern's (1) unjust enrichment claim because "Missouri law does not permit quasi-contractual claims in matters involving express contracts" and (2) gross negligence claim because no such claim exists under Missouri law. [Id. at 9, 10]

---

[3] Along with their motion to dismiss the cross-claim, the Cellar Defendants filed a copy of the complaint Great Northern filed against them in Pennsylvania state court, as well as its exhibits, which are copies of the 2006 and 2012 Agreements [ECF No. 35-1].

Great Northern opposes the Cellar Defendants' motion to dismiss its cross-claim arguing that the Pennsylvania state court previously heard and rejected the three arguments raised in the Cellar Defendants' motion to dismiss.[4] [ECF No. 42] Great Northern also argues that the waiver of subrogation clauses in the 2006 and 2012 Agreements do not apply because the Agreements "deal solely with issues of storage and relate only to Domaine Saint Louis and Domaine New York, - not Marc Lazar or Cellar Advisors." [ECF No. 42 at 8] Finally, Great Northern asserts that it properly pleaded the claim for unjust enrichment in the alternative to its breach of contract claim.[5]

### III. Discussion

#### A. *Documents properly considered on a motion to dismiss*

As a preliminary matter, the Court must determine whether, in resolving this motion to dismiss under Rule 12(b)(6), it may consider documents attached as exhibits to the motion to dismiss and response in opposition to dismissal. The Cellar Defendants argue that the 2006 and 2012 Agreements are the only documents outside the pleadings that the Court may consider when ruling on their motion to dismiss. [ECF No. 52] Great Northern asserts that the Court may consider all of the attached exhibits, including the records from the Pennsylvania state court action, because they "are embraced by the pleadings," they are "incorporated by reference in the original Declaratory Judgment action," and their authenticity is undisputed. [ECF No. 53 at 2]

Rule 12(d) provides that, "if, on a motion under Rule 12(b)(6)…, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for

---

[4] Great Northern attached as exhibits to its opposition to the Cellar Defendants' motion to dismiss copies of the docket sheet, pleadings, and orders from the Pennsylvania state court action, as well as copies of the 2006 and 2012 Agreements. [ECF Nos. 42-1 – 42-7]

[5] Great Northern does not explicitly address the Cellar Defendants' motion to dismiss Great Northern's gross negligence claim beyond arguing that the Pennsylvania state court rejected it.

summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "documents necessarily embraced by the complaint are not matters outside the pleading[s]." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017) (quoting Enervations, Inc. v. Minn. Min. & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004)).

Plaintiffs' complaint refers to the 2006 and 2012 Agreements. [ECF No. 1 at ¶¶ 23, 24] Great Northern admitted in its answer and alleged in its cross-claim that: (1) in or around 2006, the Buergers entered into a contract for wine storage with Domaine StL; and (2) in or around 2012, the Buergers entered into a contract for wine storage with Domaine NY. [ECF No. 23 at ¶¶ 23, 24, 114, 115] The Cellar Defendants' motion to dismiss the cross-claim relies almost entirely on provisions in the 2006 and 2012 Agreements. The Court therefore finds, and the parties agree, that the Court may consider the 2006 and 2012 Agreements in resolving the instant motion to dismiss because the Agreements are "embraced by the pleadings."

In regard to the records from the Pennsylvania state court case, the Court "may take judicial notice of proceedings in other courts that relate directly to matters at issue." Great Plains Trust Co. v. Union Pacific R. Co., 492 F.3d 986, 996 (8th Cir. 2007). See also Levy v. Ohl, No. 4:05-CV-2403-MLM, 2006 WL 680967, at *2 (E.D. Mo. March 13, 2006). The material from the Pennsylvania state court does not address the sufficiency of Great Northern's allegations or the 2006 and 2012 Agreements, but instead appears to address personal jurisdiction, an issue not presented here. The material from the Pennsylvania state court is therefore not relevant to this Court's resolution of the Cellar Defendants' motion to dismiss. Accordingly, in deciding the instant motion to dismiss, the only exhibits considered by the Court are the 2006 and 2012 Agreements, and the motion is not converted to a summary judgment motion under Rule 12(d).

B. *Applicable state law*

The Court must also address which state's law applies to resolve the substantive issues presented in this case. The parties agree that Missouri law applies to Great Northern's breach of contract and unjust enrichment claims. However, while the Cellar Defendants assert that the "most significant relationship" test weighs in favor of applying Missouri law to all eight of Great Northern's claims [ECF No. 52], Great Northern asserts that Pennsylvania law applies to its claim for gross negligence [ECF No. 53].[6]

The Court agrees with Great Northern's assertion that there is no conflict between Missouri's and Pennsylvania's law relating to either waivers of subrogation or unjust enrichment. [ECF No. 53] "[A] conflict does not exist 'unless the interests of the two states cannot be reconciled.'" Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1028 (8th Cir. 2003). Therefore, the Court will apply Missouri law to determine whether the subrogation waivers bar Great Northern's claims against the Cellar Defendants and whether the Great Northern properly alleged a claim for unjust enrichment. See, e.g., Bertelsen v. Channel Bio, LLC, No. 4:16-CV-330-AGF, 2017 WL 6059176, at *3 (E.D. Mo. Dec. 7, 2017).

---

[6] The parties do not invoke either of the choice-of-law provisions contained in the 2006 and 2012 Agreements. Under a section entitled, "Governing Law," the 2006 Agreement provides: "This Agreement shall be governed and construed in accordance to the laws of the State of Missouri, without regard to choice of law or conflict rules of law." [ECF No. 42-6] Because the parties address the application of Missouri law under the "most significant relationship" test, the Court need not further consider its application under the 2006 Agreement's "Governing Law" provision.

The 2012 Agreement states that it "shall be governed by the laws of the State of New Jersey without regard to conflict of laws and principles." [ECF No. 42-7] No party contends that New Jersey law applies to any issue in this case. "Parties to a contract may waive the provisions of their contract by their conduct." JTL Consulting, LLC v. Shanahan, 190 S.W.3d 389, 396 (Mo.App. 2006) ("[B]y not citing any Delaware law…, the parties have waived the Delaware choice of law clause in the [contract]."). "When a party does not invoke the state law designated in a contractual choice of law provision, the party has waived it." Cromeans v. Morgan Keegan & Co., Inc., 303 F.R.D. 543, 554 (W.D. Mo. 2014) (citing JTL Consulting, 190 S.W.3d at 396).

There is, however, a conflict of law between Missouri's and Pennsylvania's treatment of claims for gross negligence. As Great Northern recognizes in its supplemental briefing, "Pennsylvania law permits a plaintiff to seek a common law claim for gross negligence," while "Missouri generally does not." [ECF No. 53 at 7-8 (citing Royal Indem. Co. v. Sec. Guards Inc., 255 F.Supp.2d 497, 506 (E.D. Pa. 2003), DeCormier v. Harley-Davidson Co. Group, Inc., 446 S.W.3d 668 (Mo. banc 2014)]

A federal court sitting in diversity applies the substantive law of the state in which the court sits. Urban Hotel Dev. Co. v. President Dev. Co., L.C., 535 F.3d 874, 877 (8th Cir. 2008). The obligation to apply state law extends to the forum state's choice-of-law principles. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). "Under Missouri's choice-of-law rules, courts apply the substantive law of the state with the 'most significant relationship' to the occurrence and the parties." Winter v. Novartis Pharm. Corp., 739 F.3d 405, 410 (8th Cir. 2014). When resolving choice-of-law questions in a tort action, Missouri courts consider the following factors: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. Am. Guar. & Liability Ins. Co. v. U.S. Fidelity & Guar. Co., 668 F.3d 991, 996 (8th Cir. 2012) (citing Rest. 2d CONFL § 145).

Great Northern maintains that Pennsylvania law applies to its gross negligence claim because: (1) the Buergers are domiciled and reside in Pennsylvania; (2) the Buerger and the Cellar Defendants "entered into the business transactions" in Pennsylvania; and (3) the "injury to the Buergers occurred" in Pennsylvania. Importantly, the Buergers are not a party to this action.

None of the parties to the declaratory judgment action in this Court have their domicile, residence, nationality, place of incorporation or place of business in Pennsylvania. Great Northern acknowledges that the record at this stage of the litigation does not establish "where the conduct and omissions causing the harm" to Great Northern took place.[7] [ECF No. 53 at 8]

In contrast, several factors weigh in favor of applying Missouri law. The Cellar Defendants stored the Buergers' wine in Missouri (and New Jersey). Defendant Domaine NY is organized under New Jersey law and has its principal place of business in New Jersey. Defendants Cellar Advisors and Defendant Domaine StL are organized "under the laws of the State of Missouri" and have their principal places of business in St. Louis. [ECF No. 1 at ¶¶ 8, 9] Defendant Lazar is a resident and citizen of Missouri. [Id. at ¶ 11]

Based on the above, the balance of factors favors application of Missouri law to resolve the gross negligence claim. The parties do not dispute that Missouri does not recognizes degrees of negligence. See Fowler v. Park Corp., 673 S.W.2d 749, 755 (Mo. banc. 1984). Accordingly, the Court dismisses with prejudice Great Northern's cross-claim for gross negligence (Count VI).

### C. Subrogation waivers

The Cellar Defendants move to dismiss Great Northern's cross-claim, asserting that the waiver of subrogation provisions contained in the 2006 and 2012 Agreements bar all of the counts in Great Northern's cross-claim. [ECF No. 35] Great Northern counters that the

---

[7] To the extent Great Northern asserts that the Buergers and Cellar Defendants "entered into the business transactions in Pennsylvania," the record supports this conclusion with respect to the 2012 Agreement, but not the 2006 Agreement. Indeed, the fact that the Buergers appeared to have signed the 2012 Agreement in Pennsylvania is the sole factor favoring application of Pennsylvania law. The Court notes, however, that the 2012 Agreement remained in effect for, at most, two years. In contrast, the Buergers' relationship with Missouri dates back to 2005 when they "began a relationship" with Defendant Lazar, a citizen of Missouri, which they formalized the following year in the 2006 Agreement. [ECF No. 23 at ¶¶ 111, 114]

subrogation provisions do not apply to its cross-claim because the 2006 and 2012 Agreements related only to the Cellar Defendants' wine storage services. [ECF No. 42] The waiver of subrogation provisions, Great Northern argues, "were meant to relate to physical damage inflicted on the bottles of wine [while in storage] – not misallocation, conversion, or negligent tracking of wine in Cellar Defendants' inventory."[8] [Id. at 9]

"The cardinal principle for contract interpretation is to ascertain the intention of the parties and to give effect to that intent." Butler v. Mitchell-Hugeback, Inc., 895 S.W.2d 15, 21 (Mo. banc 1995) (citing Royal Banks of Mo. v. Fridkin, 819 S.W.2d 359, 362 (Mo. banc 1991)). "In doing so, we assign the plain and ordinary meaning to the terms of the contract and consider the document as a whole." Haren & Laughlin Constr. Co., Inc. v. Jayhawk Fire Sprinkler Co., Inc., 330 S.W.3d 596, 599 (Mo.App. 2011) (quotation omitted).

"Subrogation substitutes another person in the place of a creditor, so that the party in whose favor subrogation is exercised succeeds to the right of the creditor in relation to the debt." Messner v. Am. Union Ins. Co., 119 S.W.3d 642, 649 (Mo.App. 2003). In the context of insurance law, subrogation allows an insurer who has paid a loss to an insured to "step into the shoes" of the insured and "prosecute against third parties whatever rights the [insured] possesses against them." Southern Ins. Co. v. CJG Enters., Inc., No. 3:15-CV-131-RGE-SBJ, 2017 WL 3449609, at *3 (S.D. Iowa May 11, 2017) (quotation omitted). See also 16 *Couch on Ins*. § 222:5. Under Missouri law, "contract provisions waiving subrogation rights are valid and enforceable." Messner, 119 S.W.3d at 649. See also Butler, 895 S.W.2d at 22. "Thus, an

---

[8] Great Northern also argues that the waiver of subrogation provisions only apply against the Cellar Defendants identified in the introductory sections of the 2006 and 2012 Agreements – namely, Domaine StL and Domaine NY. [ECF No. 42] However, Great Northern fails to develop this argument and cites no authority for its interpretation of the Agreements' subrogation provisions.

10

insurer is barred from bringing a subrogation action if the insured waives its right to bring [its] own action against the tortfeasor…." Southern Ins. Co., 2017 WL 3449609, at *3.  If, on the other hand, an insurer "seeks to recover payments for damages that fall outside the waiver's scope, the waiver does not bar the insurer's claim for subrogation." Id.

Here, the Buergers retained Defendant Lazar to advise them regarding their wine collection and to purchase and store wines for them.  [ECF No. 1 at ¶ 21]   The following year, Mr. Buerger and Defendant Domaine StL entered the 2006 Agreement, entitled "Wine Storage Agreement," in which Defendant Domaine StL "agree[d] to store [Mr. Buerger's] wine at [Domaine StL's] facilities[.]"  [ECF No. 42-6 at ¶ 3(a)]   The 2006 Agreement provided two insurance options, under the heading "Risk of Loss," and Mr. Buerger elected the following option:

> [Mr. Buerger] has sufficient homeowners' insurance or similar insurance, a copy of the policy for which is attached to this Agreement, that provides coverage for wine stored outside the home, and said insurance shall cover any and all loss of wine sustained by [Mr. Buerger] *while such wine is in [Domaine StL's] storage facility*.  Alternatively, except as provided in this Section 3, [Mr. Buerger] is solely and personally responsible for any and all risk of loss of wine stored at [Domaine StL's] wine storage facility pursuant to this Agreement.  [Mr. Buerger] agrees that any and all insurance to be carried by [Mr. Buerger] under the terms of this option shall contain a clause whereby the insurer waives its rights to subrogation against [Domaine StL], its agents, officers and employees for any loss or damage to its property or to the property of others covered by insurance.

[Id. (emphasis added)]  Under "General Provisions," the 2006 Agreement stated:  "The terms of this Agreement shall apply to any services (in addition to the storage of goods) rendered to [Mr. Buerger] by [Domaine StL], including, but not limited to, pick-up and/or delivery of goods, handling, repackaging and inventory, except as otherwise provided in such additional agreement as may be applicable to such services."   [Id. at ¶ 6(i)]

In 2012, Mr. Buerger and Defendant Domaine NY entered the 2012 Agreement, entitled "Wine Storage Locker Agreement." [ECF No. 42-7] Pursuant to the 2012 Agreement, Defendant Domaine NY "agrees to provide to [Mr. Buerger] one or more Storage Lockers (either Full Locker or Half Locker, at [Mr. Buerg's] option) for the storage of wine in a temperature-controlled environment." [Id.] Under the section entitled "Insurance," the 2012 Agreement stated: "[MR. BUERGER] IS RESPONSIBLE FOR OBTAINING ADEQUATE INSURANCE COVERAGE FOR ALL STORED ITEMS." [Id. (emphasis in original)] Below that notice, the 2012 Agreement provided the Buergers with several insurance options. Mr. Buerger selected the following:

> [Mr. Buerger] does not elect to purchase specific wine coverage but has sufficient homeowners' insurance or other similar insurance that provides coverage for wine stored outside the home, and said insurance shall cover any and all loss of wine sustained by [Mr. Buerger] *while such wine is in Lessor's storage facility (or en route to or from such facility)*….

[Id. at ¶ 16 (emphasis added)] Additionally, Mr. Buerger agreed to indemnify Defendant Domaine NY from "any claim of subrogation…arising out of or with respect to this Agreement and the performance of any obligation hereunder."[9] [Id. at ¶ 12]

---

[9] The indemnity provision provided, in relevant part:

> Except in cases of gross negligence or intentional misconduct of [Domaine NY]…, [Mr. Buerger] hereby unconditionally, irrevocably and absolutely agrees to indemnify and hold harmless [Domaine NY], together with its past, present and future employees, members, managers, officers and agents...from any claim, action, liability, loss, damage or suit arising from, relating to or otherwise involving…. (v) the assertion of any claim of subrogation against [Domaine NY] or any of its agents by any third party (including but not limited to any insurance company) arising out of or with respect to this Agreement and the performance of any obligation hereunder.

[ECF No. 42-7 at ¶ 12]

12

In support of its position that the "waiver of subrogation clauses herein are broad and encompass Great Northern's claims," the Cellar Defendants cite Butler.[10] There, the Missouri Supreme Court considered whether a warehouse owner waived its subrogation rights against an architect with whom it had contracted to design a "retrofit." Butler, 895 S.W.2d at 18. The architect was a third-party beneficiary of a construction contract in which the owner and contractor "waive[d] all rights against [each other and the architect]…to the extent covered by property insurance obtained pursuant to this paragraph[] or other property insurance applicable to the Work[.]" Id. at 21. The Butler court held that, according to the plain language of the subrogation waiver, the owner waived its rights to recover against the architect "only to the extent of the value of the 'Work.'" Id. at 22.

Butler does not support the Cellar Defendants' broad reading of the subrogation waivers in the 2006 and 2012 Agreements. To the contrary, Butler stands for the proposition that Missouri courts limit subrogation clauses to their express terms. See 16 *Couch on Ins*. § 224.90 ("While parties to an agreement may waive their insurers' right of subrogation, the waiver of subrogation clause cannot be enforced beyond the scope of the specific context in which it appears.").

---

[10] The Cellar Defendants also cite Disabled Veterans Trust v. Porterfield Construction, Inc. 996 S.W.2d 548 (Mo.App. 1999) in support of their argument that the 2006 Agreement bars claims for "any loss…covered by insurance." [ECF No. 35 at ¶ 14] In Disabled Veterans, the Missouri Court of Appeals considered whether a waiver of subrogation clause contained in a commercial lease barred a landlord's negligence action against a tenant. Id. at 551. At issue was whether the language releasing the parties from "all liability for damage…occasioned to property owned by said parties," applied to the tenant's unit or the entire building. Id. The court held that the term "property owned" was "all encompassing," demonstrating the landlord's "intent to apply the waiver of subrogation to damages to the entire building, not merely damage to the leased premises." Id. at 552. Like Butler, Disabled Veterans establishes Missouri courts apply principles of contract interpretation to determine the scope of subrogation waivers.

13

Here, the plain language of the subrogation waivers and their context reveals that the parties intended to limit the waiver to loss or damage sustained by wine when it was in the Cellar Defendants' possession – whether in storage or in transportation. As previously discussed, the Agreements addressed only Cellar Defendants' wine storage, inventory, and transportation services. The plain language of the 2006 Agreement limited the subrogation waiver to loss of wine sustained by the Buergers "while such wine is in Cellar's storage facility. The subrogation waiver in the 2012 Agreement released any claim of subrogation against the Cellar Defendants for any losses "arising out of or with respect to the Agreement and the performance of any obligation hereunder."

This interpretation is strengthened by the provision in the 2012 Agreement requiring the Buergers to obtain insurance coverage for loss of wine sustained not only "while such wine is in [the Cellar Defendants'] storage facility," but also while the wine was "en route to or from such facility." See, e.g., Butler, 895 S.W.2d at 22. Nothing in either Agreement suggest that the waivers apply to wine purchased or invoiced prior to entering the Cellar Defendants' storage and inventory systems.

The Court therefore finds that, to the extent that the Buergers' loss occurred while Cellar Defendants were storing or transporting the wine, the Buergers waived Great Northern's right to subrogation for its claims against the Cellar Defendants. See 16 *Couch on Ins.* § 224:90 ("[W]here a waiver of subrogation clause is limited to a specific type of loss, a subrogation action is barred only to the extent it seeks recovery or that species of loss."). However, the parties have not established where or when the loss occurred. Discovery might reveal that the Cellar Defendants invoiced the Buergers for wine that was never purchased and/or never placed in storage. If such is the case, the Buergers' loss did not fall within the scope of the subrogation

waivers, and Great Northern may seek recovery from Cellar Defendants.[11] Because the Court cannot determine at the pleading stage whether Great Northern's claims are barred by the subrogation waivers, the Court denies Cellar Defendants' motion to dismiss Great Northern's cross-claim on the basis of the subrogation waivers.

### D. *Unjust enrichment claim*

The Cellar Defendants move the Court to dismiss Great Northern's unjust-enrichment cross-claim (Count III) because "Missouri law does not permit quasi-contractual claims in matters involving express contracts." [ECF No. 35 at 9] Great Northern counters that it properly pleaded alternate theories of recovery, which is permissible under Fed. R. Civ. P. 8(d)(2). [ECF No. 42 at 13]

"Missouri law does not permit a plaintiff to recover under both an express contract and unjust enrichment." Level 3 Commc'ns, LLC v. Ill. Bell Tel. Co., No. 4:13-CV-1080-CEJ, 2014 WL 414908, at *6 (E.D. Mo. 2014) (quoting Franke v. Greene, 4:11-CV-1860-JCH, 2012 WL 3156577, at *8 (E.D. Mo. Aug. 6, 2012)). "Nonetheless, '[t]he fact that a plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in [its] complaint.'" Id. (quoting Franke, 2012 WL 3156577, at *8). See also Owen v. Gen. Motors Corp., No. 06-4067-CV-CNKL, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006) ("The fact that a plaintiff cannot

---

[11] To the extent that the 2006 Agreement's "Additional Services" provision arguably encompasses Cellar Defendants' wine-purchasing activities, the Court declines to apply the 2006 Agreement's waiver of subrogation to the Buergers' alleged loss. "It is a general rule of law that when a later contract is entered into between the same parties in relation to the same subject matter as an earlier one, the second contract supersedes the first, which is regarded as having been abandoned by the parties." Nat'l Sur. Corp. v. Prairieland Const. Inc., 354 F.Supp.2d 1032, 1037-38 (E.D. Mo. 2004) (applying Missouri law). At this stage of the proceedings, it is not clear whether the 2012 Agreement superseded the 2006 Agreement, and the parties do not raise that issue. Neither the parties nor the Agreements themselves explain what effect, if any, the 2012 Agreement had upon the 2006 Agreement.

simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in her complaint."). Indeed, the Federal Rules of Civil Procedure explicitly allow parties to include in their pleadings demands for alternative relief and "state as many separate claims or defenses as [the pleader] has, regardless of consistency." Fed. R. Civ. P. 8(a)(3), (d)(3). See also Pollard v. Remington Arms Co., LLC, No.13-86-CV-W-ODS, 2013 WL 3039797, at *7 (W.D. Mo. June 17, 2012);

Although Great Northern did not explicitly plead its unjust enrichment claim in the alternative, it clearly intended this claim to operate as an alternative cause of action to its breach of contract claim. "The Court will not require hypertechnicality in pleading these claims in the alternative." Level 3, 2014 WL 414908, at *6 (quotation omitted). The Court denies Cellar Defendants' motion to dismiss cross-claim Count III.

## IV. Conclusion

For the above reasons, the Court finds that: (1) at this stage of the proceedings and on this record, the subrogation waivers contained in the 2006 and 2012 Agreements do not bar Great Northern's subrogation cross-claims against the Cellar Defendants; and (2) Great Northern properly pleaded its unjust enrichment cross-claim as an alternative cause of action to its breach of contract cross-claim. However, because Missouri law does not recognize degrees of negligence, the Court dismisses with prejudice Great Northern's cross-claim for gross negligence.

**IT IS HEREBY ORDERED** that Cellar Defendants' motion to dismiss Great Northern's cross-claim [ECF No. 35] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Cellar Defendants' motion to dismiss with prejudice Count VI (gross negligence) of the cross-claim is **GRANTED**.

**IT IS FINALLY ORDERED** that Cellar Defendants' motion to dismiss with prejudice the other seven counts in Great Northern's cross-claim is **DENIED**.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of January, 2019